FRANCIS & MAILMAN, P.C.
James A. Francis (*Pro Hac Vice*)
David Searles (*Pro Hac Vice*)
1600 Market St. Suite 2510
Philadelphia, PA 19103
Tel:    (215) 735-8600
Fax:    (215) 940-8000
Email: jfrancis@consumerlawfirm.com
          dsearles@consumerlawfirm.com

THE GOLAN LAW FIRM, LLP
Yvette Golan (*Pro Hac Vice*)
1712 N Street, N.W., Suite 302
Washington, DC 20036
Tel: (866) 298-4150, ext. 101
Fax: (928) 441-8250


TATAR LAW FIRM, APC
Stephanie R. Tatar – SBN 237792
3500 West Olive Avenue, Suite 300
Burbank, CA 91505
Tel: (323) 744-1146
Stephanie@thetatarlawfirm.com

*Attorneys for Plaintiff Christian Walsh and
the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTIAN WALSH, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHAPMAN UNIVERSITY,<br><br>Defendant. | ) CASE NUMBER: 8:20-cv-1538<br>)<br>)<br>)<br>)<br>) **CLASS ACTION COMPLAINT**<br>) **JURY DEMAND**<br>)<br>)<br>)<br>)<br>) |

Plaintiff Christian Walsh ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Chapman University ("Chapman"), and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

## I.     NATURE OF THE CASE

1.      This is a class action brought on behalf of all people who paid tuition and fees, either directly or through a third party paying on their behalf, for in-person undergraduate or graduate programs at Chapman, and who have been unable to receive the benefit of the education for which they paid, and/or the services for which their fees were paid, since the campus effectively shut down March 12, 2020 and moved classes on-line as part of Chapman's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic.

2.      While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Chapman has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution. Some classes in the Spring 2020 course terms were canceled, and all remaining Spring 2020 classes were held exclusively online.

3.      Nonetheless, Chapman has retained all tuition, fees, and related payments for these classes, and plans to do so for similar online classes in the coming course terms.

4.      As a result of Chapman's unilateral policy changes, Plaintiff has not received the educational services, access to facilities, and/or related opportunities for which Plaintiff and the putative class contracted and paid.

5.      Prior to its March 11, 2020 announcement that it would "suspend in-person classes and begin transitioning to online platforms," Chapman offered online education for only some courses in only some schools, and typically charged far less for such services as compared to in-person instruction. This is due to the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by Chapman. Access to facilities, materials, faculty, and the opportunity for on campus living, school events, collaborative learning, dialogue, feedback and critique are essential to the in-person educational experience. Plaintiff and the putative class contracted and paid for the full experience of academic life on Chapman's campus and remote online learning cannot provide the same value as in-person education.

6.      As a result, Chapman has financially damaged Plaintiff and the putative class members. Plaintiff brings this suit because Plaintiff and the class members did not receive the full

value of the services for which they paid. They have lost the benefit of their bargain and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

7.      Chapman is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities that Chapman did not provide.

8.      Plaintiff seeks, for himself and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 course term when Chapman ceased in-person classes, campus services and access to campus facilities, continuing through to such time as Chapman reinstates in-person classes.

## II.      JURISDICTION AND VENUE

9.      The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Chapman, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Chapman is headquartered in this district.

11.      The Court has personal jurisdiction over Chapman because Chapman is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Chapman conducts substantial business in this district.

## III.      PARTIES

12.      Plaintiff Christian Walsh is a citizen and resident of the State of California. Plaintiff has attended Chapman University's Lawrence and Kristina Dodge College of Film and Media Arts since the Fall 2018 semester, seeking a Master of Fine Art ("MFA") in Film Production for film direction.

13.     Plaintiff paid, either directly or through a third party paying on his behalf, approximately $22,120 in tuition to Chapman for the 2020 Spring semester, and $22,120 for the 2020 Fall semester. Plaintiff also paid $960 in lab fees for the Spring 2020 semester.

14.     Chapman University is a private university comprised of eleven constituent schools. Chapman had a total enrollment of approximately 7,656 undergraduate students and over 2,345 graduate students for the 2019-2020 academic year. As of fiscal year 2019, Chapman reportedly had an endowment of $418 million.

15.     Chapman was eligible to receive federal stimulus funding under the CARES Act, which provides for approximately $14 billion for colleges and universities based on enrollment numbers in order to mitigate the financial impact of the COVID-19 crisis on both institutions and students. On or about April 26, 2020, Chapman University signed and returned to the Department of Education a certification and agreement to receive CARES Grant funding under Section 18004(a)(1) in the amount of $5,505,229, with $2,752,615 dedicated to Emergency Financial Aid Grants directly to students.

## IV.     FACTUAL ALLEGATIONS

### A.     Closure of Campus and Suspension of In-Person Education

16.     Plaintiff and Class members are individuals who paid the cost of tuition, mandatory fees and other related costs, either directly or through a third party paying on their behalf, to attend undergraduate or graduate programs during the Spring 2020, Summer 2020, Fall 2020, Winter 2021, and/or following course terms at Chapman.

17.     Plaintiff and Class members entered into a contract with Chapman whereby the payment of tuition, fees and other related costs would be made, and Chapman would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

18.     In the 2019-2020 academic year, Chapman charged undergraduate students tuition of $28,415 per semester if taking between 12 to 18 course units, for an estimated average tuition of $1,973.26 per course unit. Students taking 11.5 or fewer course units were charged $1,765 in tuition for each course unit, and students taking more than 18 course units were charged $1,765 for each

additional course unit.

19.     In the 2019-2020 academic year, Chapman similarly charged graduate students tuition by the semester/trimester and/or by the course unit. For example, Chapman charged students attending Fowler Law School $56,360 in annual tuition, and $1,875 per unit over 16 units or under 7.5 units.

20.     On March 11, 2020, Chapman announced that, effective the next day, it would "suspend in-person classes and begin transitioning to online platforms." On or about March 12, 2020, Chapman also effectively closed its campus.

21.     Some classes were not held at all after the March 11, 2020 announcement, online or otherwise. For some classes, days and even weeks of instruction were canceled. For some classes, no online instruction was ever given, and the students instead received assignments to continue their coursework in a self-study format.

22.     Almost all classes that continued in the Spring 2020 and Summer 2020 course terms were offered only in an online format, with no in-person instruction. Even students with concentrations in areas where in-person instruction is especially crucial (such as film direction, music, theatre, and the sciences) had access only to online education options.

23.     While Chapman continued to charge students fees for use of facilities and equipment, Chapman barred students' access to those facilities and equipment. Chapman did so even if use of the facility or equipment was necessary for the student to complete the course curriculum.

24.     For example, Plaintiff paid Chapman fees in exchange for having access to film equipment and facilities, access to which were necessary for Plaintiff to complete the work assigned during the Spring 2020 semester, and are necessary for Plaintiff to complete his thesis film, which is a central benefit of his MFA in Film Production. Less than 6 weeks into 15-week Spring 2020 semester, Chapman closed its campus and barred any student from accessing the needed equipment and facilities.

25.     Chapman has also changed the standards and/or requirements for some classes, rendering the students' successful completion of the class less reflective of their abilities. Such changes are not necessitated by the COVID-19 pandemic.

26.    For example, the thesis film is the culmination of students' work obtaining an MFA in Film Production. Previously, Chapman did not impose restrictions on the thesis films' length, cast size, or number of locations. Thesis films were shot in ten full days, many were shot with sizable crews (Plaintiff estimated his thesis crew would be comprised of fifty crew members), and many used professional makeup artists. The scale of the thesis films was such that many were screened at the Directors Guild of America, exposing the students' work to industry leaders and enabling students to realize tremendous strides in their career.

27.    Citing the coronavirus, Chapman announced that it was restricting the Fall 2020/Spring 2021 thesis film to six days for shooting, limited its length to 15 minutes, limited the cast to four per day, limited the on-location crew to twelve per day, limited the locations to one per day, and barred the use of background actors and professional makeup artists.

28.    While this step to close campus and end in-person classes was warranted by circumstances, it effectively breached or terminated the contract Chapman had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the Chapman campus.

29.    Chapman's written policies provide, among other things:
The University has certain legitimate expectations concerning the conduct of professional academics ...

2. Faculty are expected to meet their classes punctually. In addition, classes should be held on campus or when appropriate, at some other suitable location for a special class or project. If for some valid reason a faculty member is unable to meet a class, arrangements shall be made to offer alternate instruction to satisfy students' expectations and the individual's own contractual obligations. This can be accomplished in various ways, and the method to be adopted shall be approved by the Chair (or equivalent) of the appropriate academic unit. If two weeks or the equivalent of scheduled class sessions must be missed, the faculty member must have the approval of the immediate academic supervisor and notification to the Provost.
...
4. Faculty are employed for the full academic year and should be available during that time for teaching and other responsibilities. A full-time faculty member shall be regularly available on campus during class days and office hours. A part-time faculty member shall be regularly available on campus in proportion to the percentage of time for which he or she is employed.

Chapman University Faculty Manual at 22.

30.     Chapman did not follow its contractual commitment to a review-and-approval process for policy changes.

31.     As a result of the closure of Chapman's campuses and facilities, Chapman has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative class contracted and paid, either directly or through a third-party on their behalf.

32.     Chapman subsequently decided that in the Fall 2020, on-campus life would be drastically reduced with the vast majority of faculty and staff continuing to work remotely into the foreseeable future.

33.     Chapman maintains that its contract with students and tuition providers remains in full effect.

34.     However, Chapman has failed to uphold its side of the agreement. Nonetheless, Chapman insists that students uphold their side of the agreement, and refuses to refund tuition and related expenses, purportedly on its provision of online classes.

35.     In so doing, Chapman is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as fully participation in the university's academic life.

36.     Plaintiff and members of the Class paid Chapman tuition in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Chapman's institution and enroll on an in-person basis.

**B.      Inferiority of Online Educational Experience**

37.     At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

      a)      Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

      b)      Specifically, students taking the in-person course earned roughly a B- (2.8

GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

    c)    Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

    d)    Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

38.    The move to online only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

39.    Before Chapman's March 11, 2020 announcement, students generally attended classes at Chapman, recognizing their educational value.  A few weeks after the move to online classes, however, student attendance dropped dramatically — sometimes with only 20% of the registered students attending a class.

40.    The online learning options Chapman offered for the Spring 2020, Summer 2020, and Fall 2020 course terms, though consistent with safety measures, cannot provide the academic and collegiate experience Chapman itself extolls as its signatures.

**C.    Lower Tuition for Online Education**

41.    In-person education is worth more than online education.

42.    Accordingly, the tuition and fees for in-person instruction at Chapman are higher than tuition and fees for its own online classes and for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

    a)    Face to face interaction with professors, mentors, and peers;

    b)    Access to facilities such as libraries, laboratories, computer labs, and study rooms;

    c)    Student governance and student unions;

d)      Extra-curricular activities, groups, intramural sports, etc.;

e)      Student art, cultures, and other activities;

f)      Social development and independence;

g)      Hands on learning and experimentation;

h)      Networking and mentorship opportunities.

43.      The fact that Chapman students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in Chapman's in-person, on-campus programs versus Chapman's own online learning program.

44.      For example, upon information and belief, for a student taking a course in Wellness and Complementary Medicine, Chapman charges a returning, non-alumni student $960 for the online version of the two-unit course (course number PTT 748), but charges $2,184.84 for the in-person version of the course (course number PT 748).

**D.     Damages**

45.      Through this lawsuit Plaintiff seeks, for himself and Class members, Chapman's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 course term when classes moved online and campus services ceased being provided, accounting for the value of classes canceled, the diminished value of online learning, the diminished value of forced pass/fail grading, as well as for each subsequent course term and continuing until Chapman resumes in-person classes. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

46.      Plaintiff also seeks damages relating to Chapman's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V.      CLASS ACTION ALLEGATIONS

47.      Plaintiff seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend Chapman University when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are Chapman, Chapman's officers, directors, trustees and

agents, the judge assigned to this action, and any member of the judge's immediate family.

48.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

49.     **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Chapman and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Chapman and third-party retailers and vendors.

50.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a)      whether Chapman accepted money from Class members in exchange for the promise to provide services;

    b)      whether Chapman provided the services for which Class members contracted;

    c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Chapman did not provide;

    d)      whether Chapman is liable to Plaintiff and the Class for unjust enrichment.

51.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Chapman's wrongful conduct as set forth herein. Further, there are no defenses available to Chapman that are unique to Plaintiff.

52.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.

1   Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

2       53.     **Superiority.** A class action is superior to all other available means for the fair and

3   efficient adjudication of this controversy. The damages or other financial detriment suffered by

4   individual Class members are relatively small compared to the burden and expense of individual

5   litigation of their claims against Chapman. It would, thus, be virtually impossible for the Class on an

6   individual basis, to obtain effective redress for the wrongs committed against them. Furthermore,

7   even if Class members could afford such individualized litigation, the court system could not.

8   Individualized litigation would create the danger of inconsistent or contradictory judgments arising

9   from the same set of facts. Individualized litigation would also increase the delay and expense to all

10  parties and the court system from the issues raised by this action. By contrast, the class action device

11  provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

12  comprehensive supervision by a single court, and presents no unusual management difficulties under

13  the circumstances.

14      54.     In the alternative, the Class may also be certified because:

15          a)    the prosecution of separate actions by individual Class members would create

16                a risk of inconsistent or varying adjudications with respect to individual Class

17                members that would establish incompatible standards of conduct for the

18                Chapman; and/or

19          b)    the prosecution of separate actions by individual Class members would create

20                a risk of adjudications with respect to them that would, as a practical matter,

21                be dispositive of the interests of other Class members not parties to the

22                adjudications, or substantially impair or impede their ability to protect their

23                interests; and/or

24          c)    Chapman has acted or refused to act on grounds generally applicable to the

25                Class as a whole, thereby making appropriate final declaratory and/or

26                injunctive relief with respect to the members of the Class as a whole.

27                        **<u>COUNT I</u>**

28                    **Breach of Contract**

55.     Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the Class against Chapman.

57.     Through the admission agreement and payment of tuition and fees, Plaintiff and each member of the Class entered into a binding contract with Chapman.

58.     As part of the contract, and in exchange for the aforementioned consideration, Chapman promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 course term, and continuing into the 2020-2021 academic year.

59.     Plaintiff and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

60.     Chapman has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above but has retained tuition monies paid by Plaintiff and the Class for the Spring 2020 and Summer 2020 course terms, and refuses to issue a corresponding tuition adjustment for the following course terms.

61.     Plaintiff and members of the Class have suffered damage as a direct and proximate result of Chapman's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

62.     As a direct and proximate result of Chapman's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Chapman for services that Chapman has failed to deliver.

## COUNT II

### Unjust Enrichment

63.     Plaintiff restates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this complain as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the members of the Class

against Chapman, and in the alternative to Count I.

65.     Plaintiff and members of the Class conferred a benefit on Chapman in the form of monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic course term.

66.     Chapman voluntarily accepted and retained this benefit by accepting payment.

67.     Chapman has retained this benefit, even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

68.     The online education services Chapman substituted for the in-person education for which Plaintiff and class members paid has a substantially lesser value, but Chapman has nonetheless retained full payment.

69.     It would be unjust and inequitable for Chapman to retain benefits in excess of the services it provided, and Chapman should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Chapman as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.      For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

D.      For prejudgment interest on all amounts awarded;

E.      For an order of restitution and all other forms of equitable monetary relief;

F.      For injunctive relief as pleaded or as the Court may deem proper;

G.      For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

H.      All other relief to which Plaintiff and members of the Class may be entitled by law or

1  in equity.

2  **JURY DEMAND**

3  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

4  and all issues in this action so triable of right.

5

6  Dated: August 19, 2020                    Respectfully submitted,

7  Christian Walsh, *on behalf of himself and all others similarly situated.*

8  By:    */s/Stephanie R. Tatar*

9  Stephanie R. Tatar, SBN 237792

TATAR LAW FIRM, APC

10  3500 West Olive Avenue, Suite 300

Burbank, CA 91505

11  Tel: (323) 744-1146

12  Stephanie@thetatarlawfirm.com

13  Yvette Golan*

THE GOLAN FIRM, LLP

14  2000 M Street, NW, Suite #750-A

Washington, D.C. 20036

15  T: (866) 298-4150

16  F: (928) 441-8250

ygolan@tgfirm.com

17

18  James A. Francis*

John Soumilas*

19  David A. Searles*

Edward H. Skipton*

20  FRANCIS MAILMAN SOUMILAS, P.C.

1600 Market Street, Suite 2510

21  Philadelphia, PA 19103

T: (215) 735-8600

22  F: (215) 940-8000

23  jfrancis@consumerlawfirm.com

jsoumilas@consumerlawfirm.com

24  dsearles@consumerlawfirm.com

eskipton@consumerlawfirm.com

25

26  *Pro hac vice* forthcoming

27  *Attorneys for Plaintiff*

28